heimpayne+chorushLLP

Intellectual Property Litigation
**www.heimpaynechorush.com**

LESLIE V. PAYNE
PARTNER

February 28, 2020

DIRECT: (713) 221-2003
EMAIL: lpayne@hpcllp.com

Hon. Nancy Atlas
c/o Shelia Ashabranner, Case Manager to Judge Nancy F. Atlas
15 Rusk Street, Room 9015
Houston, TX 77002
shelia_ashabranner@txs.uscourts.gov
**BY EMAIL AND ECF**

Re:   Case No. 4:19-cv-02397: Enventure Global Technology, Inc. v.
      Weatherford U.S. L.P.

Dear Judge Atlas:

Weatherford writes to make two narrow requests to avoid further fees and expenses of litigating claims that lack merit:

(1) As to the '175 and '284 patents-in-suit, as well as the infringement allegations against the accused MMOC tool, Weatherford requests permission to file an early partial summary judgment motion. Despite Weatherford presenting compelling evidence of non-infringement through detailed letters and meetings since last September, Enventure continues to press forward with these meritless claims; and

(2) Given the meritless allegations on the '175, '284 and '064 patents, Weatherford requests that the Court postpone invalidity contentions for those three patents.

Enventure opposes both requests.

### EARLY TARGETED PARTIAL SUMMARY JUDGMENT MOTION

In its Order dated January 9, 2020 (ECF No. 32), this Court granted a 30-day extension of Enventure's deadline for its Preliminary Infringement Contentions and informed Enventure that "[t]he Court expects [it] to use the additional time to evaluate the information provided by Defendant and to refine its infringement contentions." Despite this admonishment, Enventure continues to pursue meritless infringement allegations based on the '175 patent, the '284 patent, and five different patents asserted

against the MMOC tool.[1]

Weatherford believes that the infringement allegations discussed below are so plainly meritless and devoid of factual disputes that the allegations can be disposed of through a narrow partial summary judgment motion. Weatherford seeks permission to file this motion to preserve judicial and party resources.

***The Infringement Allegations Against Weatherford's MMOC Tool:*** One of the accused product lines is the MetalSkin Monobore Open-Hole Clad System ("MMOC"). Enventure asserts 36 claims in the '175, '819, '729, '284 and '064 patents against the MMOC. Enventure asserts the '064 patent only against the MMOC system (not the other product lines). Thus, disposing of the MMOC claims will remove the '064 patent from the case.

Weatherford's partial summary judgment motion will *not* require the Court to address any claim construction issues or apply the claim language to the technical operation of the MMOC. Instead, as explained in the February 18, 2020 letter from Weatherford to Enventure (*see* Ex. A hereto), Weatherford has not made, sold, offered for sale or used the MMOC tool in the United States during the statutory damages period. These facts cannot reasonably be disputed. Thus, there can be no infringement under Section 271(a) of the Patent Statute, which requires one or more such acts to prove infringement. This straight-forward issue is ripe for early resolution, which will promote judicial economy and prevent the unnecessary expenditure of time and fees.

***The '175 Patent:*** Enventure asserts claims 6, 36, 39 and 43 of the '175 patent against the FODC-OR and WTXC threads, which are threaded connections Weatherford has used for its expandable systems. Those threads connect two or more single expandable tubulars in an oil and gas well, similar to the threaded ends of pipe for plumbing.

As stated in the '175 patent, "casing strings [in a conventional well] are made up of a series of individual pipe joints secured together at their ends by threaded connections [prior to being lowered into a well]. Typically, a joint of casing is approximately 40 feet in length and has a threaded male 'pin' connection at one end of the joint and a threaded female 'box' connection at the opposite joint end." '175 patent at 1:24-29. Expandable tubulars consist of specialized well casing lowered into a well and then "enlarged radially by moving an oversized forging tool, or 'pig,' through the string, causing the string to expand radially beyond its original radial dimensions." *Id.* at 1:14-17. The '175 patent

---

[1] For the sake of clarity, Weatherford believes Enventure's other allegations also lack merit. But in recognizing the Court's desire to focus the issues, Weatherford narrows its request to these limited issues that depend on a minimal understanding of the technical operation of the accused products.

explains that the expansion process can cause threaded connections to leak pressure. *See, e.g.*, *id.* at 1:41-2:44. The '175 patent "relates to methods and apparatus for effecting a secure mechanical engagement and seal in the connected ends of pipe sections that are expanded radially to form an increased internal diameter pipe string." *Id.* at 1:7-10.

The independent claims from which each asserted claim depends require that the seal in the threaded connection is created by the act of radial expansion, which occurs **after** the tubing is lowered into the well. *See, e.g.*, claim 4 ("**radially expanding** said first and said second tubular bodies to compress said seal component **for forming a seal** between said first and second tubular bodies…."); claim 35 ("**radially expanding** said first and said second axial ends [ ] to compress said sealing component between said first tubular pipe body and said second tubular pipe body **to seal** the annular area between said first tubular pipe body and said second tubular pipe body"). Given the clarity of the claim language, there should be no claim construction issues.[2]

As explained in Weatherford's November 28, 2019 letter to Enventure (*see* Ex. B hereto) and as further explained in an earlier meeting between the parties in September, Weatherford cannot infringe the asserted claims because the seal for the accused threads is formed **before** the tubing is lowered downhole. In other words, the seal for the Weatherford threads is *not* formed **during** tubular radial expansion downhole, as required by the asserted claims. There is no factual dispute about when the seal is formed for the accused Weatherford threads. For example, Enventure's preliminary infringement contentions recognize that the accused threaded connections are sealed prior to expansion, which is necessary to comply with the Association of Petroleum Institute's standard for Solid Expandable Systems that Weatherford follows.

These non-infringement issues are straight-forward. This is precisely why

---

[2] Were Enventure to raise a claim construction issue, it will be limited to whether the quoted claim language can cover connections that are sealed before the tubular is expanded. That issue can easily be resolved because the intrinsic evidence reinforces that the claims are limited to threaded connections that are sealed only upon expansion. *See, e.g.*, '175 patent at 5:44-49 ("An important object of the present invention is to provide a seal assembly that can be employed between superimposed, inner, and outer tubular bodies **to produce a seal when the inner body is expanded radially into the outer body and both bodies are then together expanded radially**.") (emphasis added). Moreover, to obtain the '175 patent at the Patent Office, the applicant emphasized the requirement for the seal to be created through radial expansion. *See* March 27, 2001 Office Action Response at 13 ("The purpose of radial expansion [in the claims] is to seal a connection through two components that are already secured together."); *id.* at 21. Finally, under any claim construction, Enventure's allegations are futile because the claims are invalidated by multiple prior art references. *See, e.g.*, U.S. Patent Nos. 5,083,608 and 6,604,763.

Enventure's in-house counsel agreed to drop the '175 allegations after the parties' September meeting. *See* Ex. C at 1 ("I confirm that EGT will no longer assert the '175 patent against the MetalSkin FODC-OR and WTXC threads…."). It also is likely the reason why Enventure dropped this patent during its litigation against Mohawk. Nevertheless, Enventure still continues to pursue its meritless '175 infringement claim, leaving early summary judgment as the only vehicle to avoid more unnecessary expenses and fees.

***The '284 Patent:*** Enventure asserts claims 1, 21, 24-28, 32, 35, 40, 49, 56 and 60 of the '284 patent against the FODC-OR and WTXC threads and the corresponding product lines. Enventure's allegations target an optional outer metal sleeve, which (when used) is attached to a single tubular.

The '284 patent is directed to "tubular sleeves" used to prevent damage to the threaded connections of expandable tubular members during the radial expansion process. *See* '284 patent at 2:1-15. An example of such a tubular sleeve (annotated in yellow, with the male/pin connection in blue and the box/female connection in purple) is shown in Fig. 1d, in which "the internal flange 18 of the tubular sleeve 16 mates with and is received within the annular recess 30 of the end portion 26 of the second tubular member 28. Thus, the tubular sleeve 16 is **coupled to** and surrounds **the external surfaces of the first and second tubular members**, 10 and 28." '284 Patent at 7:25-30 (emphasis added); Fig. 1d:



Fig. 1d

Each asserted claim requires a tubular sleeve "coupled" to two connected tubular members, as shown in the above reproduced figure. *See* claims 1, 49, 56 and 60 ("coupling an end of a first tubular member to **an end** of a tubular sleeve" and "coupling an end of a second tubular member to **another end** of the tubular sleeve") (emphasis

added); *see also* January 18, 2010 Preliminary Amendment at 15 ("As stressed by Applicants in the examiner interview, claim 1, for example, includes coupling the ends of the tubular members in addition to coupling each of the tubular members to **different ends** of the sleeve.") (emphasis added). Like the '175 claims, the '284 claims should not be subject to any claim construction issues.[3]

As explained in Weatherford's detailed December 4, 2019 letter to Enventure (*see* Ex. D hereto) and as further explained in the earlier September meeting between the parties, Weatherford does not infringe the asserted claims because the optional sleeve is glued (or "coupled") to only an end of one of the tubulars (the end of the tubular with the box/female connection). The sleeve does not touch a second tubular member (the end of the tubular with the pin/male connection). Thus, the accused sleeve is not "coupled" to first and second tubular members, as the claims require. There is no factual dispute over how the sleeve is connected to the one tubular.

Like the '175 issues, the issues on the lack of infringement for the '284 patent are straight-forward. Enventure's refusal to drop the meritless '284 allegations leaves early summary judgment as the only vehicle to avoid more unnecessary expenses and fees.

## POSTPONEMENT OF CERTAIN INVALIDITY CONTENTIONS

Because Enventure's infringement claims for the '175 and '284 patents (and its claims against the MMOC) lack merit, Weatherford also requests that the Court postpone invalidity contentions for the '175, '284 and '064 patents. Recall that Enventure asserts the '064 patent only against the MMOC, meaning that the '064 patent will be dismissed if Weatherford prevails on the MMOC allegations.

Weatherford should not be forced to spend any additional time and money preparing invalidity contentions for these three patents. The Court raised the possibility of postponement of all or some of the invalidity contentions at the initial scheduling conference. *See* pages 25-26, 36-37, and 47-48 of the November 18, 2019 transcript. Weatherford respectfully requests to postpone invalidity contentions for the '175, '284 and '064 patents until the above-requested motion is decided.

If the Court determines that a hearing is necessary to rule on the above requests, Weatherford will be available at the Court's convenience.

---

[3] Enventure has previously suggested that Judge Gilmore ruled (under seal) that "coupling" can include "gluing." Even if accurate, this ruling would not affect the partial summary judgment motion. Additionally, as explained in Weatherford's correspondence to Enventure (*see* Ex. D at 8), the claims (under any construction) are invalid in view of multiple pieces of prior art. *See, e.g.*, U.S. Patent Nos. 6,896,057; 6,564,875.

Regards,

Leslie V. Payne
Attorney-in-Charge for
Defendant Weatherford U.S., L.P.


cc:     All Counsel of Record
        Via the Court's CM/ECF System